GILBERTO MARRERO BERMÚDEZ, lesionado, PUERTO RICO LIGHTERAGE, patrono, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada, FONDO DEL SEGURO DEL ESTADO, asegurador y recurrente.

*Número:* O-78-172      *Resuelto:* 17 de octubre de 1978

*Yolanda Morales de Rodríguez, Antonio Acevedo Torres, Francisco Falú Lebrón* y *Jorge Márquez Gómez,* abogados del Fondo del Seguro del Estado; *Marcelino García Benítez,* abogado del lesionado.

PER CURIAM: ■ A moción de reconsideración del recurrente Fondo del Seguro del Estado destacando el hecho de que su moción de reconsideración a la Comisión Industrial presentada el 11° día de notificada la decisión del caso, estaba en tiempo toda vez que el término de 10 días a tales fines provisto por el Art. 10 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 11, párr. 2°) se cuenta a partir de "la fecha en que el interesado *reciba* la notificación de la decisión de la Comisión", dejamos sin efecto nuestra resolución declinatoria de jurisdicción de 12 de septiembre próximo pasado, y aceptamos el recurso, en el que ya desde el 15 junio último habíamos expedido la siguiente orden para mostrar causa:

"El lesionado recurrido tendrá un término hasta el 7 de julio de 1978 para comparecer a mostrar causa por la que no deba devolverse el caso a la Comisión Industrial para que con audiencia

del patrono resuelva no solo las cuestiones de incapacidad y mutilación, sino también la de doble compensación."

El lesionado contestó nuestra orden en escrito de 7 de julio de 1978, mas no ha logrado superar la falta de debido proceso de ley, substantivo y adjetivo, en los procedimientos seguidos ante la Comisión Industrial.

Para el 10 de enero de 1972 el lesionado, un joven de 16 años, fue empleado por la Puerto Rico Lighterage para trabajo de emergencia en los muelles descargando abono, y en el momento en que se dirigía a tomar agua fue golpeado por el cangilón (*bucket*) de una grúa sufriendo contusiones en la cabeza, hombro izquierdo y espalda. La evaluación neurológica reveló un síndrome post traumático relacionado y conmoción cerebral; y la prueba médica señaló la presencia de una cicatriz "muy discreta, queloide como de 1-1/2 pulgada en forma irregular en la ventrícula [*sic*] a nivel de la articulación del hombro en su parte anterior [que] se encuentra localizada en el tercio superior del brazo izquierdo." (—Informe del Oficial Examinador de 13 marzo, 1978, pág. 2—) lesiones que eventualmente obtuvieron de la Comisión Industrial, determinaciones de incapacidad de 15% de las funciones fisiológicas generales, más 5% por desfiguración por abrasión en el tercio superior del brazo. ([1])

---

[1] Como el caso ha de volver a la Comisión para nueva audiencia llamamos su atención hacia lo declarado por el obrero al Oficial Examinador: que al presente trabaja en Torre de la Reina como encargado de mantenimiento; que en los muelles trabajó un solo día, reclutado mientras jugaba baloncesto, para labor de emergencia; que ahora gana $74.00 semanales, no tiene que estar en contacto con el público, no está expuesto al sol que le provoca dolor de cabeza; que no ha tenido dificultad en conseguir trabajo, para que pase nuevamente sobre la compensabilidad como *desfiguración* de la citada cicatriz discreta en el hombro, no visible pues la cubre la ropa y que no ha afectado ni disminuido la capacidad del lesionado para obtener trabajo. Véase *Alonso García* v. *Comisión Industrial*, 102 D.P.R. 741, 744 y ss. (1974).

■ La Comisión Industrial hubo de asumir jurisdicción sobre este caso por demora en el Fondo del Seguro, procedimiento dispuesto en el Art. 7 de la Ley (11 L.P.R.A. sec. 9) y como hemos visto, la Comisión resolvió únicamente sobre la compensación regular sin entrar al aspecto de compensación adicional ordenada para trabajadores lesionados menores de 18 años en el Art. 3 de la Ley (11 L.P.R.A. sec. 3) que en su acápite "Derechos de los Menores" dispone:

"En caso de obreros menores de diez y ocho (18) años empleados en contravención a las leyes vigentes a la fecha del empleo, que sufrieren lesiones o enfermedades ocupacionales de acuerdo con los términos de este Capítulo, la compensación que les corresponda en caso de incapacidad, o a sus beneficiarios en casos de muerte, será el doble del importe correspondiente a un obrero de diez y ocho (18) años empleado legalmente; Disponiéndose, que el patrono pagará la compensación adicional aquí prevista, el montante de la cual constituirá un gravamen (*lien*) sobre toda la propiedad del patrono y se hará efectiva en la forma prevista en este Capítulo para el cobro de la compensación en casos de patronos no asegurados y disponiéndose, también que el Administrador del Fondo del Seguro del Estado, antes de proceder al cobro de dicha compensación adicional al patrono, dará traslado del expediente a la Comisión Industrial, para que ésta dé, tanto al patrono como al obrero, oportunidad de ser oídos y defenderse."

■ La posición del recurrido para que se mantenga la adjudicación parcial del caso por la Comisión y que se remita al Fondo del Seguro del Estado para decisión sobre compensación adicional relacionada con minoridad, es insostenible pues una vez que la Comisión asume jurisdicción a tenor del Art. 7, acción justificada ampliamente en este caso que tiene un historial de más de seis años, dicho organismo superior debe tomar el caso para decisión en su integridad y no fragmentariamente. La solución en esta etapa de revisión se limitaría

a ordenar a la Comisión que complete la adjudicación de cuestiones pendientes, de no existir el defecto de falta de debido proceso en lo actuado por dicho organismo cuasijudicial. La compensación adicional que por vía de penalidad impone el citado Art. 3 de la Ley al patrono, que aun cuando esté asegurado, emplea a un menor en contravención a las leyes, se determina por el importe de la compensación sencilla acordada, que en este caso fue de 15% de las funciones fisiológicas generales y 5% por desfiguración. El debido proceso de ley se cumple, por tanto, dando audiencia al patrono para que pueda defenderse de una decisión que por disposición del estatuto habrá de constituir un gravamen (*lien*) sobre toda su propiedad y que le expondrá a una ejecución sumaria. La propia Ley instruye que se dé al patrono oportunidad de ser oído y defenderse. La decisión parcial de la Comisión, tiene el efecto de privación de propiedad del patrono P.R. Lighterage sin el debido proceso de ley.

Con estos antecedentes y fundamentos, *se expide el auto, se anulan las Resoluciones recurridas, y se devuelve el caso a la Comisión Industrial para que con audiencia plena del trabajador lesionado y de su patrono, y en ejercicio de la jurisdicción correctamente asumida, proceda a ventilar y adjudicar este caso en todos sus aspectos.*